UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ORRIN LYNN TOLLIVER, JR. p/k/a
DAVID PAYTON,

                Plaintiff,

              vs.

JAMES LOUIS MCCANTS, an individual doing
business as JIMI MAC MUSIC and
OG MUSIC; CHERRY RIVER MUSIC
COMPANY; WILL I AM MUSIC, INC;
WILL ADAMS; and UMG RECORDINGS,
INC.,

                Defendants.

**Civil Action No.** 05-10840 (JFK)

---

**PRETRIAL MEMORANDUM SUBMITTED BY PLAINTIFF**

---

503147400

- i -

Plaintiff Orrin Lynn Tolliver, Jr. p/k/a David Payton, ("Tolliver") respectfully submits this Pretrial Memorandum in advance of the trial in this matter, set for June 20, 2011.

I.  **Introduction**

In prior decisions, this Court already determined that Defendant James Louis McCants ("McCants") infringed Tolliver's copyright in and to the musical composition "I Need A Freak." McCants, by his own admission, licensed "I Need A Freak" for use in a new composition called "My Humps." "My Humps" was recorded by the musical group The Black Eyed Peas, and became a Number-One hit.

McCants initially denied granting the license, and then urged that he granted a license for a different musical composition. After being confronted with the license he issued, McCants next urged that he wrote the song, and then settled on the argument that Tolliver wrote the song, but that McCants had received an assignment. Yet, McCants testified that no such written assignment ever existed and, accordingly, the Court granted summary judgment of copyright infringement in favor of Tolliver.

McCants asserted a variety of defenses, but by stipulation between the parties, he withdrew with prejudice all defenses except the equitable defenses of waiver and acquiescence. In a later decision, this Court granted Tolliver's motion for summary judgment dismissing these defenses.

The only issue that now remains is the issue of damages.

As further detailed below, Tolliver seeks actual damages, pursuant to 17 U.S.C. § 504.

## II. Legal Basis for Damages

The Copyright Act provides that

> (a) In General.— Except as otherwise provided by this title, an infringer of copyright is liable for either—
>
>> (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
>>
>> (2) statutory damages, as provided by subsection (c).
>
> (b) Actual Damages and Profits.— The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.[1]

Tolliver, intends to seek only <u>actual</u> damages here. As further detailed below, the minimum amount of damages to Tolliver would be the actual profits of McCants. Tolliver seeks, however, the profits he would have made for licensing the composition himself.

## III. Factual Basis for Damages

### A. Undisputed Facts Regarding Evidence:

*Undisputed Facts Concerning the Original License Issued by McCants*

- McCants licensed "I Need A Freak," for use in the composition "My Humps."
- Per industry custom, McCants received an ownership interest in "My Humps."
- McCants ownership interest in "My Humps is 25%, which means that he receives 25% of the income generated by the exploitation of "My Humps."

---

[1] 17 U.S.C. § 504.

*Undisputed Facts Concerning the Administration of Exploitation of "My Humps"*

- "My Humps" is administered exclusively by Cherry River Music Company ("Cherry River").
- "My Humps" generates income based on the licenses by Cherry River to third parties for exploitation, such as digital downloads, compact discs, movie and television, and other uses.
- Public performances "My Humps" are administered by Broadcast Music Inc. ("BMI").

*Undisputed Facts Concerning Accounting and Paying for use of "My Humps"*

- Cherry River does not account to or pay Tolliver for the licenses it issues.
- Cherry River has been paying McCants for these licenses.
- McCants refused to produce these licenses in discovery.
- Cherry River produced all of these licenses; prior counsel for McCants agreed that he would not object on authenticity grounds to admission of the licenses issued by Cherry River.
- Cherry River has issued numerous licenses for "My Humps," resulting in approximately 1,736,000.
- Cherry River has credited McCants 25% of the above amount, or approximately $434,000.
- BMI credits 25% of the performance income from "My Humps."
- BMI pays to both Tolliver and McCants 12.5% of the amount generated by "My Humps."
- BMI has paid Tolliver $383,052.32

- BMI has paid to McCants $383,052.32.
- Tolliver has not been paid by McCants or Cherry River.
- Tolliver has received payments from BMI.

### B.   Tolliver's Damages Contentions:

Tolliver has produced the expert report of Jay L. Berger.  Mr. Berger will testify as to license negotiations and license income.  Mr. Berger also will also testify as to the amounts at issue and how to calculate damages.  Mr. Berger has been previously qualified as an expert in this district and throughout the country on these topics.   The time for filing of motions *in limine* has passed, and McCants has not challenged Mr. Berger's expertise or his proposed testimony.

McCants has not produced an expert, either on industry standards or for damages calculations.

Mr. Berger then testify regarding the amount of monies that Tolliver would have received but for McCants' infringement.  Mr. Berger will explain that Mr. Tolliver should have received a 50% ownership in "My Humps," not a 25% ownership.  Mr. Berger will then calculate the actual damages to Tolliver based on the licenses issued by Cherry River at the proper royalty rate of 50%, as well as a median figure at 33%.

Factored into these conclusions, Mr. Berger will explain the increase in damages by virtue of an uplift of payments by BMI.

Based on the foregoing, Mr. Berger will explain that pursuant to the licenses by Cherry River and the amounts received from BMI, McCants has received no less than $843,437.05.  Mr. Berger will then explain that, with a more favorable license, Tolliver would have received $2,000,921.61 .

## VI. Conclusion

As this case is limited to damages, it is unclear what, if any, additional evidence will need to be presented. However, any such evidence will be supportive of the allegations stated above.

Respectfully submitted,

BAKER HOSTETLER, LLP

Dated: June 14, 2011
New York, New York

By: _____
Oren J. Warshavsky (OW 9469)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4624
Facsimile: (212) 589-4201
e-mail: owarshavsky@bakerlaw.com

*Attorneys for Plaintiff*